# UNITED STATES DISTRICT COURT

### FOR THE
### EASTERN DISTRICT OF KENTUCKY

### LONDON DIVISION

| | |
|---|---|
| **JESSICA L. CORNETT**, <br><br> *Plaintiff*, <br><br> v. <br><br> **CITY OF HAZARD**, **KENTUCKY**, **DARREN WILLIAMS**, in his individual capacity, and in his official capacity as the chief of police, and **TONY EVERSOLE**, in his individual capacity, and in his official capacity as the city manager. <br><br> *Defendants*. | Case No. _6:24-CV-171-CHB_ <br><br> **COMPLAINT** <br><br> DEMAND FOR JURY TRIAL |

Comes Plaintiff, Jessica L. Cornett ("***Cornett***"), through undersigned counsel, and for her Complaint and Demand for Jury Trial against Defendants, City of Hazard, Kentucky ("***Hazard***"), Darren Williams ("***Williams***"), and Tony Eversole ("***Eversole***"), states as follows:

### PRELIMINARY STATEMENT

1.      Cornett brings this civil action to redress her termination from the Hazard Police Department ("***HPD***"). On April 17, 2024, Cornett reported an unlawful and excessive use of force, without cause or justification, against a citizen of Perry County, Kentucky, by Williams, chief of HPD. Two (2) days later, on April 19, 2024, Williams and Eversole demoted Cornett from the rank of deputy chief of HPD. In short, Williams and Eversole established an official policy of retaliation against Cornett; they shamed her for "disloyalty" to HPD, reassigned her to night shift, confiscated her patrol vehicle from her personal residence, placed disciplinary actions into her personnel file without notice, directed other officers to file complaints against her, and seized personal property

1

from her office. Defendants also interfered with her ability to obtain family and medical leave under federal law. On August 27, 2024, Williams and Eversole terminated Cornett from HPD. Cornett now seeks relief under 42 U.S.C. § 1983, 29 U.S.C. § 2615, and state law, including the Kentucky Whistleblower Act.

## PARTIES

2.      Plaintiff, Cornett, is a natural person and resident of Perry County, Kentucky.

3.      Hazard is a "home rule" city in Perry County, Kentucky.

4.      Hazard operates HPD.

5.      Defendant, Williams, is a natural person and resident of Perry County, Kentucky.

6.      Williams is the chief of HPD.

7.      Cornett seeks a final judgment against Williams in his individual capacity.

8.      Cornett seeks a final judgment against Williams in his official capacity as the chief of HPD.

9.      Defendant, Eversole, is a natural person and resident of Perry County, Kentucky.

10.     Eversole is the city manager of Hazard.

11.     Cornett seeks a final judgment against Eversole in his individual capacity.

12.     Cornett seeks a final judgment against Eversole in his official capacity as the city manager of Hazard.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this civil action under 28 U.S.C. § 1331, 28 U.S.C. § 1343(a), 29 U.S.C. § 2617(a)(2), 42 U.S.C. § 1983, and 42 U.S.C. § 1988(a).

14.     This Court has supplemental jurisdiction over the state claims under 28 U.S.C. § 1367(a).

15.     This Court is the proper venue for this civil action under 28 U.S.C. § 1391(b)(2) because "a substantial part of the events or omissions giving rise to the claim occurred" in this judicial district.

## FACTUAL ALLEGATIONS

1.     Cornett was the deputy chief of HPD.

2.     On April 5, 2024, Cornett learned that, one (1) week earlier, Williams performed an unlawful and excessive use of force, without cause or justification, on Billy G. Fugate ("***Fugate***"), a resident of Perry County, Kentucky, in violation of the policies and procedures of HPD and state and federal law (the "***Use of Force***").

3.     Upon information and belief, Williams performed a chokehold or neck restraint on Fugate.

4.     An unknown female captured the aftermath of the Use of Force on her cellphone:



5.     The same day, April 5, 2024, Cornett notified Eversole of the Use of Force.

6.      On April 8, 2024, Cornett asked Williams to complete a Response to Resistance Report (an "**_RTR Report_**") for the Use of Force.

7.      When Cornett told Williams that he "need[ed] to do a use of force report," Williams refused, instructed Cornett to mind her own business, and stated that "next time he would choke [Fugate] harder."

8.      Upon information and belief, Williams has not completed an RTR Report for the Use of Force.

9.      Upon information and belief, Hazard has not investigated the Use of Force.

10.      On April 17, 2024, Cornett prepared a memorandum because she was fearful that Williams and other members of HPD would conceal the Use of Force (the "**_Memorandum_**"). The Memorandum is marked **Exhibit 1** to this Complaint and incorporated herein by this reference.

11.      The same day, April 17, 2024, Cornett delivered the Memorandum to Eversole.

12.      The Memorandum read:

It was brought to my attention that Chief Darren Williams may have used excessive force on a subject on March 30, 2024. To my knowledge there was a road rage incident and the victim called Chief Williams directly. Chief Williams responded to the house of the alleged perpetrator. Sometime while on scene Chief Williams choked Billy Fugate and then had officers arrest him. This incident has not been investigated by our department and is being relayed to the City Manager due to him being the immediate supervisor of the Chief of Police. This is the second time Chief Willians has been accused of choking a subject while working at the Hazard Police Department.

13.      Two (2) days later, on April 19, 2024, Williams and Eversole demoted Cornett from the rank of deputy chief of HPD.

14.      The same day, April 19, 2024, Williams and Eversole held a meeting with Cornett and served her with a Disciplinary Form (HR Form 19) (the "**_Form_**"). The Form is marked **Exhibit 2** to this Complaint and incorporated herein by this reference.

15. The Form offered a brief statement of the pretextual justification for the disciplinary action: "insubordination, failure to follow orders, cursing and abusing subordinates."

16. The Form implemented the following penalty: "demotion to her original position which was captain."

17. When Cornett asserted her rights to due process under K.R.S. § 15.520 and K.R.S. § 95.450, Eversole alleged that "she was not protected under the police officer bill of rights," and that "[she] could be demoted without any of that due process."

18. The same day, April 19, 2024, Williams informed Cornett that she "wasn't allowed to supervise anyone anymore."

19. On April 22, 2024, three (3) days after Williams and Eversole demoted Cornett "to her original position which was captain," Lieutenant Daniel Gross ("***Gross***"), a member of HPD, delivered a Notice of Hearing to Cornett (the "***Notice***").

20. The Notice read, "Pursuant to your request and in compliance with the City of Hazard Employee Handbook, please take notice that a hearing has been scheduled regarding the above-referenced matter and will be heard on April 26, 2024, at 11:00 a.m. in the Council Chambers at Hazard City Hall."

21. When Cornett received the Notice, Williams and Eversole had already demoted her from the rank of deputy chief of HPD.

22. When Cornett received the Notice, Williams and Eversole had already stripped her of her supervisory authority.

23. On April 25, 2024, Cornett filed a complaint and petition for declaratory judgment against Defendants in the Perry Circuit Court (the "***complaint***").

24.    Upon information and belief, the next day, April 26, 2024, Williams pinned a copy of the complaint to a wall in the headquarters of HPD:



25.    Upon information and belief, after Williams and Eversole demoted Cornett from the rank of deputy chief of HPD, they instructed other officers to file complaints against her.

26.    Upon information and belief, Williams and Eversole solicited complaints from other officers to substantiate their charge of "abusing subordinates."

27.    On or about April 29, 2024, Williams instructed an unknown officer to confiscate the patrol vehicle assigned to Cornett from the driveway of her personal residence.

28.    Williams refused to provide Cornett with another patrol vehicle.

29.    On May 13, 2024, Williams reassigned Cornett from her usual hours to night shift.

30.    Williams knew that Cornett had an infant son at home, and that she could not work night shift.

31.    Upon information and belief, on May 14, 2024, Williams pinned a copy of the "Response to Resistance" policy above the complaint in the headquarters of HPD:



32.     Williams highlighted the definition of "chokehold."

33.     Over the next three (3) months, Williams issued six (6) different reprimands to Cornett (the "***Reprimands***"). The Reprimands are marked **Exhibit 3** to this Complaint and incorporated herein by this reference.

34.     The Reprimands are completely baseless.

35.     Williams did not inform Cornett of the Reprimands.

36.     Williams did not serve Cornett with a copy of the Reprimands.

37.     Cornett did not learn of the Reprimands until October 24, 2024, when she received a copy of her personnel file from Hazard.

38.     On May 24, 2024, Williams issued an Employee Disciplinary Notice to Cornett (the "***May 24th Notice***"). The May 24th Notice is marked **Exhibit 4** to this Complaint and incorporated herein by this reference.

39.     The May 24th Notice charged Cornett with a violation of the attendance policy.

40.     The May 24th Notice stated, "Captain Cornett called in sick to work and then came to a Bar B Q."

41.    The May 24th Notice recommended a suspension of one (1) week without pay.

42.    The May 24th Notice is completely baseless.

43.    Williams did not inform Cornett of the May 24th Notice.

44.    Williams did not serve Cornett with a copy of the May 24th Notice.

45.    Cornett did not learn of the May 24th Notice until October 24, 2024, when she received a copy of her personnel file from Hazard.

46.    On June 1, 2024, Williams issued an Employee Disciplinary Notice to Cornett (the "***June 1st Notice***"). The June 1st Notice is marked **Exhibit 5** to this Complaint and incorporated herein by this reference.

47.    The June 1st Notice charged Cornett with a violation of policies or procedures.

48.    The June 1st Notice stated, "Captain Cornett is a substandard employee. I recommend she be fired."

49.    The June 1st Notice recommended dismissal.

50.    The June 1st Notice is completely baseless.

51.    Williams did not inform Cornett of the June 1st Notice.

52.    Williams did not serve Cornett with a copy of the June 1st Notice.

53.    Cornett did not learn of the June 1st Notice until October 24, 2024, when she received a copy of her personnel file from Hazard.

54.    On or about June 11, 2024, Williams removed Cornett from the shift schedule for HPD.

55.    On June 13, 2024, Williams issued an Employee Disciplinary Notice to Cornett (the "***June 13 Notice***"). The June 13th Notice is marked **Exhibit 6** to this Complaint and incorporated herein by this reference.

56. The June 13th Notice charged Cornett with carelessness, unsatisfactory work quality, a violation of policies or procedures, and mishandling evidence.

57. The June 13th Notice stated, "Captain Cornett has once again failed to follow orders and failed to perform her duty."

58. The June 13th Notice recommended dismissal.

59. The June 13th Notice is completely baseless.

60. Williams did not inform Cornett of the June 13th Notice

61. Williams did not serve Cornett with a copy of the June 13th Notice.

62. Cornett did not learn of the June 13th Notice until October 24, 2024, when she received a copy of her personnel file from Hazard.

63. On or about August 27, 2024, Williams terminated Cornett from HPD.

64. On August 27, 2024, Williams sent an email to Cornett; it read, "I haven't heard from you at all since your last excuse which put you off thru the 9th of August. You no longer work here. And your access to KYOPS should have been revoked. I will make sure that is done today."

65. Williams terminated Cornett without notice of the charges against her.

66. Williams terminated Cornett without the opportunity for a hearing before the legislative body of Hazard.

67. On September 7, 2024, Cornett visited the headquarters of HPD to remove personal property from her office.

68. When Cornett entered the headquarters of HPD, she discovered that someone had already thrown all of her personal property into trash bags outside of her office:



69.     Upon information and belief, Williams directed other officers to clean out her office before he terminated her from HPD.

70.     When Cornett examined her personal property, she discovered that someone had removed two (2) different patches from a memory box in her office:



71.     Cornett received the patches from the former chief of police.

72.     Upon information and belief, Williams stole the patches from her memory box.

73.     When Cornett inspected her office, she learned that someone had removed personal cash from the drawer of her desk.

74.     Upon information and belief, Cornett also discovered that Williams had pinned a message onto the complaint in the headquarters of HPD:



75.     The message read, "It is always good to support your leader. If you undermine a leader, it not only hurts them, it also hurts the morale of the troops as well as you as a subordinate leader. You are setting an example; if the example you set is one of disrespect up the chain of command, you can expect much the same from the people you are leading."

### CAUSES OF ACTION

#### COUNT I
#### VIOLATION OF 42 U.S.C. § 1983

76.     Cornett restates and reiterates each of the foregoing averments.

77.     The Fourteenth Amendment to the United States Constitution proclaims, "No State shall... deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

78.    Cornett had a property interest in her rank of deputy chief based upon K.R.S. § 15.520 and K.R.S. § 95.450.

79.    Cornett had a property interest in her employment with HPD based upon KRS 15.520 and K.R.S. § 95.450.

80.    Defendants violated the Fourteenth Amendment to the United States Constitution when Williams and Eversole demoted Cornett from the rank of deputy chief of HPD without due process.

81.    Defendants violated the Fourteenth Amendment to the United States Constitution when Williams and Eversole dismissed Cornett from HPD without due process.

82.    Williams and Eversole acted under the color of state law.

83.    Hazard had an official policy, practice, and custom of retaliation against Cornett, without due process, in violation of her rights under the Fourteenth Amendment to the United States Constitution.

84.    Williams and Eversole established an official policy, practice, and custom of retaliation against Cornett, without due process, to punish her disclosure of the Use of Force.

85.    Williams and Eversole had final policymaking authority for HPD and Hazard.

86.    Williams and Eversole acted under an official policy, practice, and custom of retaliation against Cornett when they demoted her from the rank of deputy chief without due process.

87.    Williams and Eversole acted under an official policy, practice, and custom of retaliation against Cornett when they terminated her from HPD without due process.

88.    Hazard is liable for its official policy, practice, and custom of retaliation against Cornett.

89.     Cornett has suffered damages because of the unlawful conduct of Defendants.

**COUNT II**
**VIOLATION OF 29 U.S.C. § 2615**
**THE FAMILY AND MEDICAL LEAVE ACT**

90.     Cornett restates and reiterates each of the foregoing averments.

91.     29 U.S.C. § 2612(a)(1) states:

[A]n eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following: (A) Because of the birth of a son or daughter of the employee and in order to care for such son or daughter. ... (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

92.     29 U.S.C. § 2615(a)(1) states, "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."

93.     Cornett was an eligible employee under 29 U.S.C. § 2611(2).

94.     Hazard is a covered employer under 29 U.S.C. § 2611(4).

95.     Cornett was entitled to family and medical leave because of the birth of her son.

96.     Cornett was entitled to family and medical leave in order to care for her son.

97.     Cornett was entitled to family and medical leave because of her own serious health conditions.

98.     Cornett notified Hazard of her intention to utilize family and medical leave.

99.     On or about May 15, 2024, Cornett spoke with Valerie Coberg ("***Coberg***"), the human resources manager for Hazard.

100.    Cornett notified Coberg of her need for family and medical leave.

101.    Cornett asked Coberg for the necessary paperwork to complete her request for family and medical leave.

102.    Cornett asked Coberg for information about her rights and responsibilities under the Family and Medical Leave Act.

103.    Coberg told Cornett that she "did not know how to do FMLA," and that family and medical leave "is not something that we do."

104.    On or about May 25, 2024, Cornett spoke with Carlos Campbell ("**Campbell**"), the chief financial officer of Hazard.

105.    Cornett notified Campbell of her conversation with Coberg and her need for family and medical leave.

106.    Cornett asked Campbell for the necessary paperwork to complete her request for family and medical leave.

107.    Cornett asked Campbell for information about her rights and responsibilities under the Family and Medical Leave Act.

108.    Campbell told Cornett that "he would talk to the city attorneys and get back with [her]."

109.    Campbell never contacted Cornett after their conversation.

110.    On July 19, 2024, Hon. Kate A. Bennett ("**Bennett**"), counsel for Cornett, sent an email to Hon. Jonathan C. Shaw ("**Shaw**"), counsel for Hazard (the "**July 19th Email**").

111.    The July 19th Email read, in part:

The last issue that I would like to address is Jessica's FMLA denial by the City. Her physicians have determined that she is qualified for FMLA. At the advice of her medical team, Jessica has requested the appropriate paperwork for FMLA leave from City Hall, but she has been met by resistance and told by city administrators that "this [FML leave] is not something that we do." We do not want to file an FML claim, but she can't even get the paperwork from the city to even pursue this option.

112.    The July 19th Email requested "[i]mmediate distribution of paperwork regarding FML to Jessica."

113.     Hazard did not respond to the July 19th Email.

114.     On July 23, 2024, Bennett sent another email to Shaw (the "*July 23rd Email*").

115.     The July 23rd Email read, "Has the FML paperwork been distributed to Ms. Cornett?"

116.     Hazard did not respond to the July 23rd Email.

117.     On August 30, 2024, forty-two (42) days after the July 19th Email, and three (3) days after Williams dismissed Cornett from HPD, Shaw distributed a blank notice of eligibility to Bennett.

118.     Upon information and belief, between May 15, 2024, and August 27, 2024, Defendants issued at least one (1) disciplinary action to Cornett for her attendance, in complete disregard of her requests for family and medical leave.

119.     Hazard willfully interfered with, and restrained, Cornett in the exercise of her rights under the Family and Medical Leave Act when it ignored her valid requests for family and medical leave, failed and refused to distribute the necessary paperwork for her to complete her requests for family and medical leave, and failed and refused to inform her of her rights and responsibilities under federal law.

120.     Hazard willfully denied valid requests for family and medical leave.

121.     Cornet has suffered damages because of the unlawful conduct of Defendants.

122.     This Court should reinstate Cornett to the rank of deputy chief of HPD, order Defendants to restore all of her seniority rights at HPD, order Defendants to reimburse her for all lost wages, fringe benefits, and monetary losses, with interest at the prevailing rate, and order Defendants to compensate her for all of her damages, including, without limitation, embarrassment, humiliation, and mental anguish.

123.    This Court should enter an award of liquidated damages against Defendants, in accordance with 29 U.S.C. § 2617(a)(1)(A)(iii), because they acted in bad faith and without reasonable justification for their conduct.

124.    This Court should order Defendants to reimburse Cornett for all of her court costs, expenses, and reasonable attorney's fees.

### COUNT III
### VIOLATION OF K.R.S. § 15.520
### THE POLICE OFFICER BILL OF RIGHTS

125.    Cornett restates and reiterates each of the foregoing averments.

126.    K.R.S. § 15.520 creates a minimum system of professional conduct for police officers and establishes certain due process rights for police officers.

127.    K.R.S. § 15.520(5)(a) states:

Any complaint filed by a citizen under subsection (3) of this section or any allegation of conduct that would constitute a violation of law enforcement procedures under subsection (4) of this section shall be investigated by the employing agency or another designated law enforcement agency in accordance with the provisions of this subsection if the employing agency determines that an investigation of the complaint or the alleged conduct is warranted.

128.    K.R.S. § 15.520(6)(a) states:

If it is determined through investigation or other means that the facts alleged in a citizen complaint or in an accusation of a violation of law enforcement procedures warrant charging the officer, the charge shall be made in writing with sufficient specificity so as to fully inform the officer of the nature and circumstances of the alleged violation in order that he or she may be able to properly defend himself or herself.

129.    K.R.S. § 15.520(7) states, "Unless waived by the charged officer in writing, a hearing shall be conducted by the officer's appointing authority to determine whether there is substantial evidence to prove the charges and to determine what, if any, disciplinary action shall be taken if substantial evidence does exist."

130.    Upon information and belief, Defendants accused Cornett of a violation of law enforcement procedures.

131.    The June 13th Notice charged Cornett with a violation of policies or procedures and mishandling evidence.

132.    The June 13th Notice stated, "Captain Cornett has once again failed to follow orders and failed to perform her duty."

133.    The June 13th Notice recommended dismissal.

134.    Upon information and belief, Defendants failed to investigate the June 13th Notice in accordance with K.R.S. § 15.520(5).

135.    Defendants failed to charge Cornett for the June 13th Notice in accordance with K.R.S. § 15.520(6).

136.    Defendants deprived Cornett of the opportunity for a public hearing on the June 13th Notice in accordance with K.R.S. § 15.520(7).

137.    Cornett has suffered damages because of the unlawful conduct of Defendants.

### COUNT IV
### VIOLATION OF K.R.S. § 95.450

138.    Cornett restates and reiterates each of the foregoing averments.

139.    K.R.S. § 95.450 applies "to members of police... departments in... those cities that are included in the Department for Local Government registry created pursuant to subsection (9)...."

140.    K.R.S. § 95.450(9) states, "the Department for Local Government shall create a registry of cities that shall be required to comply with the provisions of this section."

141.    Hazard is included in the "registry of cities" published by the Department for Local Government.

142.    K.R.S. § 95.010(2)(e)(2) states, "'Member' means any and all officers, ... policemen, clerical or maintenance employees in the police ... department, except: ... As used in KRS 95.450, it shall not include the chiefs of police... or the clerical and maintenance employees of the police... departments...."

143.    Cornett was a "member" of the police department in Hazard.

144.    K.R.S. § 95.450(2) states:

[N]o member of the police... department in cities listed on the registry pursuant to subsection (9) of this section... shall be reprimanded in writing, dismissed, suspended, or reduced in grade or pay for any reason except inefficiency, misconduct, insubordination, or violation of law or of the rules adopted by the legislative body, and only after charges are preferred and a hearing conducted as provided in this section.

145.    Defendants reprimanded Cornett in writing, reduced her in grade and pay, and dismissed her from HPD.

146.    K.R.S. § 95.450(3)(b) states:

Subject to the provisions of KRS 15.520, the mayor, city manager, or legislative body shall, whenever probable cause appears, prefer charges against any member the mayor, city manager, or legislative body believes to be guilty of conduct justifying his dismissal or punishment. The charges shall be written and shall set out clearly the charges made.

147.    Defendants reprimanded, demoted, and dismissed Cornett without notice of the charges against her.

148.    K.R.S. § 95.450(4)(a) states:

Upon the hearing all charges shall be considered traversed and put in issue, and the trial shall be confined to matters related to the issues presented. Unless otherwise agreed by the legislative body and the member charged, the legislative body shall proceed to hear the charges within ten (10) days after the charges were filed.

149.    K.R.S. § 95.450(4)(b) states, "At least five (5) days before the hearing the member accused shall be served with a copy of the charges and a statement of the day, place, and hour at which the hearing of the charges will begin."

150.    K.R.S. § 95.450(5) states, "The action and decision of the body on the charges shall be reduced to writing and entered in a book kept for that purpose, and the written charges filed in the matter shall be attached to the book containing the decision."

151.    K.R.S. § 95.450(7) states, "The legislative body shall fix the punishment of a member of the police... department found guilty, by a reprimand in writing, suspension for any length of time not to exceed six (6) months, by reducing the grade if the accused is an officer, or by combining any two (2) or more of those punishments, or by dismissal from the service."

152.    Defendants reprimanded, demoted, and dismissed Cornett without the opportunity for a hearing before the legislative body of Hazard.

153.    When Defendants demoted Cornett from the rank of deputy chief, they scheduled a sham hearing after they implemented the disciplinary action.

154.    Defendants reprimanded, demoted, and dismissed Cornett without sufficient evidence of the charges against her.

155.    Defendants deprived Cornett of any opportunity, let alone any real or meaningful opportunity, to defend herself before they reprimanded her in writing, reduced her in grade and pay, and dismissed her from HPD.

156.    Williams and Eversole fixed the punishments of Cornett, not the legislative body of Hazard.

157.    Cornett has suffered damages because of the unlawful conduct of Defendants.

## COUNT V
### VIOLATION OF K.R.S. § 61.102
### *THE KENTUCKY WHISTLEBLOWER ACT*

158.    Cornett restates and reiterates each of the foregoing averments.

159.    K.R.S. § 61.102(1) states:

No employer shall subject to reprisal, or directly or indirectly use, or threaten to use, any official authority or influence, in any manner whatsoever, which tends to discourage, restrain, depress, dissuade, deter, prevent, interfere with, coerce, or discriminate against any employee who in good faith reports, discloses, divulges, or otherwise brings to the attention of... any other appropriate body or authority, any facts or information relative to an actual or suspected violation of any law, statute, executive order, administrative regulation, mandate, rule, or ordinance of the United States, the Commonwealth of Kentucky, or any of its political subdivisions, or any facts or information relative to actual or suspected mismanagement, waste, fraud, abuse of authority, or a substantial and specific danger to public health or safety.

160.    Cornett reported and disclosed the Use of Force to Eversole.

161.    Cornett reported and disclosed the Use of Force to an appropriate body or authority.

162.    The Use of Force constituted an actual or suspected violation of state and federal law.

163.    The Use of Force constituted an actual or suspected abuse of authority.

164.    Defendants subjected Cornett to reprisal, and used, and threatened to use, their official authority and influence, to restrain and punish her good faith disclosure of the Use of Force.

165.    Defendants reprimanded Cornett because of her disclosure of the Use of Force.

166.    Defendants demoted Cornett because of her disclosure of the Use of Force.

167.    Defendants dismissed Cornett from HPD because of her disclosure of the Use of Force.

168.    The disclosure was, at minimum, a contributing factor in the personnel actions.

169.    Cornett has suffered damages because of the unlawful conduct of Defendants.

170.    K.R.S. § 61.990(4) states:

A court, in rendering a judgment in an action filed under KRS 61.102 and 61.103, shall order, as it considers appropriate, reinstatement of the employee, the payment of back wages, full reinstatement of fringe benefits and seniority rights, exemplary or punitive damages, or any combination thereof. A court may also award the complainant all or a portion of the costs of litigation, including reasonable attorney fees and witness fees.

171.    This Court should enter injunctive relief in favor of Cornett.

172.    This Court should reinstate Cornett to the rank of deputy chief of HPD, order Defendants to restore all of her seniority rights at HPD, order Defendants to reimburse her for all lost wages and fringe benefits, with interest at the prevailing rate, and order Defendants to compensate her for all of her damages, including, without limitation, embarrassment, humiliation, and mental anguish.

173.    This Court should enter an award of exemplary and punitive damages against Defendants.

174.    This Court should order Defendants to reimburse Cornett for all of her court costs, expenses, and reasonable attorney's fees.

## COUNT VI
### VIOLATION OF SECTION 2 OF THE KENTUCKY CONSTITUTION

175.    Cornett restates and reiterates each of the foregoing averments.

176.    Section 2 of the Kentucky Constitution proclaims, "Absolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority."

177.    Cornett had a property interest in her rank of deputy chief based upon K.R.S. § 15.520 and K.R.S. § 95.450.

178.    Cornett had a property interest in her employment with HPD based upon KRS 15.520 and K.R.S. § 95.450.

179.    Defendants violated Section 2 of the Kentucky Constitution when they demoted Cornett from the rank of deputy chief without due process.

180.    Defendants violated Section 2 of the Kentucky Constitution when they dismissed Cornett from HPD without due process.

181.    Cornett has suffered damages because of the unlawful conduct of Defendants.

## COUNT VII
### WRONGFUL TERMINATION

182.    Cornett restates and reiterates each of the foregoing averments.

183.    Defendants wrongfully terminated Cornett in violation of a fundamental and well-defined public policy.

184.    Defendants infringed upon Section 2 of the Kentucky Constitution, K.R.S. § 15.520, and K.R.S. § 95.450 when they demoted Cornett from the rank of deputy chief without due process.

185.    Defendants infringed upon Section 2 of the Kentucky Constitution, K.R.S. § 15.520, and K.R.S. § 95.450 when they dismissed Cornett from HPD without due process.

186.    Defendants infringed upon K.R.S. § 61.102 when they subjected Cornett to reprisal, and used, and threatened to use, their official authority and influence, to restrain and punish her good faith disclosure of the Use of Force.

187.    Cornett has suffered damages because of the unlawful conduct of Defendants.

## COUNT VIII
### PUNITIVE DAMAGES

188.    Cornett restates and reiterates each of the foregoing averments.

189.    Defendants acted with gross negligence, oppression, fraud, malice, and common law bad faith, with willful, wanton, and reckless disregard for the rights of Cornett.

190.    This Court should enter an award of exemplary and punitive damages against Defendants.

### COUNT IX
### INDIVIDUAL LIABILITY OF WILLIAMS AND EVERSOLE

191.    Cornett restates and reiterates each of the foregoing averments.

192.    Williams and Eversole are liable in their individual capacities for each of the causes of action in this Complaint.

193.    Williams and Eversole acted in bad faith when they reprimanded Cornett, demoted her from the rank of deputy chief, and dismissed her from HPD.

194.    Williams and Eversole intentionally violated the constitutional and statutory rights of Cornett when they reprimanded her, demoted her from the rank of deputy chief, and dismissed her from HPD.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Jessica L. Cornett, respectfully prays for the following relief:

1.    A final judgment against Defendants, Hazard, Williams, and Eversole, jointly and severally, and for Williams and Eversole, in both their individual and official capacities, for the fullest extent of all damages established by the evidence, including, without limitation, lost wages and fringe benefits, reputational injuries, and embarrassment, humiliation, and mental anguish;

2.    An award of pre- and post-judgment interest at the prevailing rate from April 19, 2024, until the date of judgment, and from the date of judgment, until paid in full;

3.    An order reinstating Cornett to the rank of deputy chief of HPD and restoring all of her seniority rights at HPD;

4.      An award of liquidated damages in accordance with 29 U.S.C. § 2617;

5.      An award of exemplary and punitive damages in accordance with K.R.S. § 61.990;

6.      An award of court costs, expenses, and reasonable attorney's fees;

7.      A trial by jury on all issues so triable;

8.      All further relief to which Cornett may appear entitled by law or equity, including,

without limitation, the right to Amend this Complaint.

Respectfully submitted,

**MATTMILLER CROSBIE, PLLC**

*/s/ Nicholas A. Oleson*

_____
Scott A. Crosbie
Nicholas A. Oleson
Kate A. Bennett
201 East Main Street, Suite 800
Lexington, Kentucky 40507
Telephone: (859) 287-2400
Facsimile: (859) 287-2401
scrosbie@mattmillercrosbie.com
noleson@mattmillercrosbie.com
kbennett@mattmillercrosbie.com
*COUNSEL FOR PLAINTIFF*
*JESSICA CORNETT*